**THOMAS W. GARLAND, INCORPORATED, a corporation, Appellant,**

v.

**Harry RUBIN et al., Respondents.**

**No. 34488.**

Missouri Court of Appeals, St. Louis District.

Jan. 9, 1973.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 13, 1973.

Application to Transfer Denied April 9, 1973.

Rassieur, Long, Yawitz & Schneider, by Richard A. Stockenberg and Allen A. Yoder, St. Louis, for plaintiff-appellant.

Bryan, Cave, McPheeters & McRoberts, by Joseph H. Grand, Charles A. Weiss and Andrew S. Love, Jr., St. Louis, for respondents.

CLEMENS, Judge.

This appeal concerns a dispute between plaintiff-appellant tenant (hereafter Garland) and defendant-respondent owners (hereafter Rubin). They differ about who should pay the $26,656 cost of repairing the terra cotta facing of a five-story building owned by Rubin and leased to Garland since 1941. Each party prays for a declaratory judgment that the other is liable for the repair expense and each seeks a money judgment against the other for half the expense.

In 1941 Garland installed a new terra cotta facing on the store, fastened to the building by metal anchors. Moisture had penetrated behind the facing through the years and rusted the anchors to the extent the facing became loose. Trouble arose in 1969 when the City's building inspector found the loosened facing dangerous. Garland and Rubin differed about responsibility for repairing the facing, but under threat of sanctions by the City jointly contracted for prompt repair, each paying half the cost pending judicial determination of responsibility.

The trial court granted judgment against Garland and we affirm.

Liability depends on the parties' lease, renewed in 1952 for a 30-year term. Rubin refers to it as a "net-lease." In addition to Garland's obligations for repairs and maintenance Garland paid all real estate taxes and carried fire, casualty and public liability insurance. As to the present dispute Rubin relies on the "repair clause" of the lease; Garland relies on the "surrender clause" and an exception to the repair clause. We emphasized those parts of the pertinent paragraph and for reference have inserted bracketed numbers before each sentence.

"[1] *All repairs* deemed necessary by Lessee during the term of this lease, *and the expense of maintaining* both *the exterior* and the interior and sidewalks *of said demised premises*, including all sewers and water connections from City mains to demised premises, *shall be at the cost and expense of the Lessee*, and all repairs and alterations so made to remain as part of the realty.

"[2] All plate and all other glass now in said demised premises is at the risk of the Lessee, and if broken is to be replaced by and at the expense of said Lessee.

"[3] The Lessee and all holding under said Lessee *agree to* use reasonable diligence in the care and protection of said premises during the term of this lease, and to *keep the same in good order and repair, and to surrender the said premises at the termination of this lease in as good condition as received, ordinary wear and tear and depreciation excepted.*

"[4] Should Lessee fail to make such repairs after notice it is agreed Lessor may do so and charge same to Lessee as additional rent, which shall be payable monthly as the rent herein provided.

"[5] *Lessee shall not be obligated to repair damages resulting from* fire, explosion, act of God, *elements*, or any other catastrophe. . . ."

The trial court found for Rubin, holding that under the lease's sentence [1] Garland was obliged to pay for repairing the facing.

We agree that Garland's liability for repairing the terra cotta facing is clearly fixed by sentence [1]. The parties so construed the lease down through the years. Garland had repaired the roof and guttering, treated the foundation for termites, reinforced the fire escape and installed new front doors. In principle the present problem is no different.

Garland seeks relief from the broad liability of sentence [1] by relying on sentence [3]. Therein Garland was obligated to keep the building in good order and repair and to surrender it in as good condition as when received, ordinary wear and tear and depreciation excepted. There is no need to credit Garland's argument that repairing the facing is within the last quoted phrase. First, we are not concerned with liability existing at surrender time; the lease was still in force until 1982. Second, reading the whole paragraph it is clear sentence [3] in no way limits Garland's continuing obligation under sentence [1] to maintain the exterior of the building.

Garland seeks to evade its responsibility by stressing the case of Herboth v. American Radiator Co., 145 Mo.App. 484, 123 S. W. 533, the only Missouri case cited. There, upon expiration of a nine-year lease

the owner sought recovery from the tenant for its failure to restore the leased property to its original condition. *Herboth* is not helpful. The *Herboth* lease had no separate and distinct repair and maintenance clause as in sentence [1]. *Herboth* differs since it concerned liability under a wear-and-tear exception and determined liability at the termination of the lease rather than during its term, the issue now before us.

Garland cites cases from other states. Most concern liability arising under a surrender clause excepting ordinary wear and tear; none has such a broad maintenance clause as here. Because of other differences in the leases and physical defects in those cases we will not attempt to rationalize them with our case. Suffice it to say none detracts from the conclusion we reach here.

Garland contends it is not liable for repairing the facing, arguing that a lessee is not required to make "structural substantial or extraordinary repairs." This argument is based on cases holding no such responsibility arises under a "keep the premises in good order and repair" clause. We cannot accept Garland's premise that repairing the facing was a "structural, substantial or extraordinary repair." Garland is again trying to limit its responsibility to sentence [3] and is ignoring sentence [1] which requires Garland to repair and maintain the exterior of the building.

Garland next points to sentence [5] relieving it from liability for damages "resulting from fire, explosion, Act of God, *elements* or other catastrophe." (Our emphasis). The defective condition was caused by usual weather conditions over a period of 28 years. In the quoted clause the word "elements" is preceded by words indicative of sudden, overwhelming force; the word "elements" is followed by the clause "or other catastrophe." In this context the excepting word "elements" does not apply to the slow deterioration of the terra cotta fasteners.

Garland's last grasp at non-liability is based on St Louis City Ordinance 399.200 making building owners responsible for exterior repairs. Garland cites Zeibig v. Pfeiffer Chemical Co., 150 Mo.App. 482, 131 S.W. 131, but in its brief admits that case does not apply where "the lease transfers this duty to Appellants." We have held this lease did so transfer the repair duty to Garland, so the Zeibig case is not in point.

Judgment affirmed.

DOWD, C. J., and McMILLIAN, J., concur.